Steven P. Chen (SBN 251768),
Brian M. Fitzgerald (SBN 267279)
Broadview IP LAW, PC
3200 El Camino Real, Suite 260
Irvine, CA 92602
Telephone: (949) 232-0721
Email: schen@broadviewlaw.com
Email: bfitzgerald@broadviewlaw.com
Email: email@broadviewlaw.com

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| MOTIVERSE INC.<br><br>    Plaintiff,<br><br>vs.<br><br>CORSAIR GAMING, INC.<br><br>    Defendant. | Case No.:<br><br>**COMPLAINT FOR PATENT INFRINGEMENT OF U.S. PATENT NO. 7,088,338**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Motiverse Inc. ("Motiverse" or "Plaintiff"), for its causes of action for patent infringement of United States Patent No. 7,088,338 ("the '338 patent," "Asserted Patent," or "Patent-in-Suit") against Defendant Corsair Gaming, Inc. ("Corsair" or "Defendant"), hereby complains and alleges as follows:

## THE PARTIES

1. Plaintiff Motiverse is a corporation organized under the laws of South Korea, with its principal place of business located at B1 126-MA99th, Seoun-ro 13, Seocho-gu Seoul, Republic of Korea.

2. On information and belief, Defendant Corsair is a publicly traded U.S. corporation, organized under the laws of Delaware, with its corporate headquarters at 115 N. McCarthy Boulevard Milpitas, California. Previously known as Corsair Components and Corsair Memory, it was incorporated in California in January 1994 originally as Corsair Microsystems and reincorporated in Delaware in 2007.

3. Upon information and belief, Corsair is involved in the design, development, manufacture, use, importation, offer for sale, and sale of gear and technology for gamers, content creators, and PC enthusiasts. According to Corsair's website, Corsair's products include gaming gears such as keyboards, headsets, mice, gaming PCs, gaming furniture, etc. For example, according to its 2024 Form 10-K annual report, Corsair provides gamer and creator peripherals including gaming keyboard, optical gaming mice, headsets, controllers, streaming products, microphones, streaming cameras, sim racing products, etc.

## JURISDICTION

4. This civil action arises under the patent laws of the United States, 35 U.S.C. § 101, *et seq.* This Court's jurisdiction over this action is proper under the above statutes, including 35 U.S.C. § 271, *et seq.*, 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1338 (jurisdiction over patent actions).

5. Upon information and belief, this Court has personal jurisdiction over Corsair in accordance with due process and/or the California Long Arm Statute. Corsair has, inter alia, conducted and continues to conduct business in the State and in this judicial district, either directly, or through its subsidiaries, agents, and/or affiliates including, upon information and belief, by marketing, selling, and offering for sale gaming products in the Central District of California.

6. Further, this Court has personal jurisdiction over Corsair because it has engaged, and continues to engage, in continuous, systematic, and substantial activities within this State, including the substantial marketing and sale of products and services within this State and this District. This Court has personal jurisdiction over Corsair because Corsair has committed acts giving rise to Motiverse's claims for patent infringement within and directed to this District and has derived substantial revenue from its goods and services provided to individuals in this State and this District. Corsair has purposefully availed itself of the privilege of conducting business within this District; has established sufficient minimum contacts with this District such that it should reasonably and fairly anticipate being haled into court in this District; has purposefully directed activities at residents of this State; and at least a portion of the patent infringement claims alleged herein arise out of or are related to one or more of the foregoing activities.

7. Relative to patent infringement, Corsair has committed acts in violation of 35 U.S.C. § 271, and has made, used, marketed, distributed, offered for sale, and/or sold infringing products and services in this State, including in this District, and otherwise engaged in infringing conduct within and directed at, or from, this District. Such infringing products and services include at least (1) Corsair wireless gaming mice and (2) Corsair wired gaming mice. All such infringing systems are collectively referred to herein as the "Corsair Products." Such Corsair Products have been offered for sale, distributed to, sold, and used in this District, and the infringing conduct has caused injury to Motiverse, including injury suffered

1  within this District. These are purposeful acts and transactions in this State and this
2  District such that Corsair reasonably should know and expect that it could be haled
3  into this Court because of such activities.

4      8.    On information and belief, venue is proper because Corsair maintains
5  regular and established places of business in this District. The foregoing allegation
6  will likely have evidentiary support after a reasonable opportunity for further
7  investigation or discovery. For example, according to its 2024 Form 10-K annual
8  report, Corsair leases manufacturing and warehousing facilities in various parts of
9  the United States for product development, sales and service support and
10 administrative functions, including contracts with various third-party distribution
11 centers in California for additional warehouses to store its inventory. On
12 information and belief, Corsair has transacted and, at the time of filing this
13 Complaint, is continuing to transact business within the Central District of
14 California. For all of these reasons, personal jurisdiction exists and venue is proper
15 in this Court under 28 U.S.C. §§ 1391(b)(1), (2) and (c)(2) and 28 U.S.C. § 1400(b).

## PATENT-IN-SUIT

17     9.    The '338 patent, entitled "Optical Mouse and Method for Preventing
18 an Erroneous Operation thereof," was filed on July 28, 2003, as U.S. Patent
19 Application No. 10/628,983, which claims the priority under 35 U.S.C. § 119 of
20 Korean Patent Application No. 10-2002-0045093, which was filed on July 30, 2002.
21 The '338 patent issued on August 8, 2006. A true and correct copy of the '338 patent
22 is attached as **Exhibit A** to this Complaint.

23     10.    The '338 patent expired on September 4, 2024.

24     11.    The Asserted Patent identifies Jung Hong Ahn as the inventor (the
25 "Inventor").

26     12.    Through a chain of assignments, the Inventor assigned the entire right,
27 title, and interest in and to the '338 patent to ATLab Inc. on July 16, 2003; ATLab
28 Inc. assigned the entire right, title, and interest in and to the '338 patent to

1 Intellectual Discovery Co., LTD. on June 17, 2013; and Intellectual Discovery Co.,
2 LTD. assigned the entire right, title, and interest in and to the '338 patent to
3 Motiverse on May 1, 2025.

4     13.    By assignment, Motiverse owns all right, title, and interest in and to
5 the '338 patent, with full rights to enforce the '338 patent and sue to recover for
6 past infringement.

7     14.    The '338 patent has two independent claims (claims 1 and 4) and three
8 dependent claims. Motiverse asserts at least independent claim 1 and dependent
9 claim 2 in this Complaint.

10     15.    The '338 patent is directed to an optical mouse capable of preventing
11 an erroneous moving value of the optical mouse from being output when the optical
12 mouse is spaced apart or lifted from an operating surface. An optical mouse emits
13 light onto a surface over which the optical mouse operates and measures the
14 reflected light from the operating surface to calculate the movement of the optical
15 mouse.

16     16.    The specification of the '338 patent discloses shortcomings in the
17 operation of a conventional optical mouse at the time of the July 30, 2002 priority
18 date of the '338 patent. A conventional optical mouse calculates the movement of
19 the optical mouse by capturing and comparing patterns of light reflected from the
20 operating surface during different sampling periods as the optical mouse is moved
21 across the operating surface. The optical mouse outputs moving values of the
22 optical mouse to an external system such as a monitor for displaying the precise
23 movement of the optical mouse as a mouse cursor. The bottom of the optical mouse
24 is normally in contact with the operating surface to ensure that the reflected light
25 representing an image of the operating surface is precisely captured by an image
26 sensor. When the bottom of the optical mouse is spaced apart from the operating
27 surface, such as when a user lifts the optical mouse off of the operating surface, the
28 image of the operating surface may become out of focus to the image sensor,

resulting in erroneous calculation of the moving values and causing the mouse cursor on the monitor to move when there is no actual horizontal movement of the optical mouse.

17. The specification of the '338 patent provides a detailed technical explanation of how the claimed inventions overcome those shortcomings by calculating a statistic of the reflected light captured by the image sensor, such as an average pixel values of the image sensor, and zeroing the moving values output by the optical mouse based on the calculated statistic to prevent moving the displayed mouse cursor when the optical mouse is detected as being picked up from the operating surface.

18. The '338 patent was valid and enforceable through its entire patent term and the granted claims of the '338 patent were recognized as being novel and non-obvious over the conventional art by the United States Patent and Trademark Office and are therefore presumed novel and non-obvious over the conventional art under 35 U.S.C. § 282.

19. An embodiment of the invention described in the '338 patent is reflected, for example, in Claim 1 of the '338 patent:

> An optical mouse comprising:
>
> an image sensor, consisted of a plurality of pixels, for outputting signals accumulated in a given time as a pixel unit;
>
> an A/D converter for receiving the output of the image sensor and converting the output into a digital signal format;
>
> an image data processor for receiving the output of the A/D converter and calculating a moving value of the optical mouse;
>
> a system controller for controlling data flow with an external system and receiving the image data processor;
>
> a statistic value calculator for receiving the output of the A/D converter and calculating a statistic value; and

6
COMPLAINT FOR PATENT INFRINGEMENT

          a pick-up state discriminator for receiving the output of the statistic value calculator and generating a pick-up state signal,

              wherein the pick-up state signal is used to make the moving value "0".

20. As set forth in column 3, lines 33-45 of the '338 patent, "The optical mouse accomplishes samplings of surface images with more than 1500 times per second. A light reflected by the surface in one sampling period is projected to the image sensor, and a current location of the optical mouse is calculated by using the projected value. The image sensor 41 captures an image on the surface to output the image, and the A/D converter 42 receives the output of the image sensor 41 to convert the output into a digital signal format. The image data processor 43 receives the output of the A/D converter 42 to compare a difference between pixels to make a pattern, and compares with a pattern made in a prior sample period to calculate the moving value V(X,Y) of the optical mouse."

21. Column 3, lines 46-62 of the '338 patent further sets forth "When the optical mouse is spaced apart from the operating pad surface, a quantity of light reflected by the surface and entered into the image sensor 41 is significantly reduced. Therefore, a quantity of pixel outputs inputted into the A/D converter 42 becomes smaller, and pixel values converted to digital signals become below the reference level for the most part … The pick-up state discriminator 46 judges whether the optical mouse is spaced apart from the operating surface when an average value of pixels in one sampling period becomes below the reference level continuously, and generates the pick-up state signal SPIC. In the pick-up state, the optical mouse controls as if the optical mouse is not moving by sending a value V(X,Y)="0" rather than sending a value calculated therein as a moving value."

22. As a result, and as set forth in column 3 line 63 – column 4 line 14 of the '338 patent, "While a user picks up the optical mouse from the surface, moves it above the surface and puts it on the surface, this invention prevents the optical

mouse from outputting movement signals … When the optical mouse is moved with spacing apart from the surface, the optical mouse detects the pick-up state to control the moving value V(X,Y), representing a moving of the optical mouse, as a value of below the reference level. Therefore, in the pick-up state, the cursor appeared in the monitor (not shown) by the moving value outputted by the optical mouse is not moved."

## INFRINGING PRODUCTS

23. On information and belief, Corsair designs, manufactures, uses, offers for sale, sells, and/or imports into the United States optical mice including gaming mice popular in the gaming community.

24. In the parlance of optical mice, a Lift Off Distance (LOD) describes the point when a user lifts the optical mouse from the operating surface and the optical mouse stops tracking its movement. For gaming mice, a low LOD is very important for gamers with low sensitivity because often a user repositions the mouse and the transmission of the movement has to be interrupted.

25. Corsair's optical mice that practice LOD and infringe the '338 patent include, but are not limited to, the products listed in **Exhibit B** ("Accused Products").

26. Corsair's sales and marketing materials describe the Accused Products as equipped with optical sensors from PixArt Imaging Inc., ("PixArt"). These optical sensors include PMW3391, PMW3392, and PMW3367.

27. On information and belief, PMW3391, PMW3392, and PMW3367 are customized optical sensors based on PMW3360 and/or PMW3389.

28. On information and belief, PMW3391, PMW3392, PMW3367, PMW3360, and PMW3389 share the hardware architecture for tracking movement and for detecting a lift of the optical mice.

29. The product datasheets for PMW3360 and PMW3389 describe these parts as optical navigation chips targeted for gaming mouse. For example, the product datasheet for PMW3389 describes the optical navigation chip as measuring changes in position by optically acquiring sequential surface images (frames) and mathematically determining the direction and magnitude of movement. The product data sheet for PMW3360 describes finding the average raw data value of an image frame and reporting a lift state.

30. On information and belief, PMW3360 and PMW3389 determine if an optical navigation system has been lifted from the navigation surface and prevent cursor movement on a corresponding computer if a lift has been detected. On information and belief, PMW3360 and PMW3389 perform a lift detection by comparing the average of the pixels of the acquired image against a predetermine threshold value.

## COUNT I
### (Infringement of U.S. Patent No 7,088,338)

31. Motiverse re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

32. This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq.*

33. Motiverse is the sole owner of the '338 patent with all substantial rights to the '338 patent, including the exclusive right to enforce, sue, and recover damages for past infringements.

34. The '338 patent was valid and enforceable through its entire patent term and was duly issued in full compliance with Title 35 of the United States Code.

35. Corsair has knowledge of the '338 patent based on the filing and service of this Complaint.

**Direct Infringement - 35 U.S.C. § 271(a)**

36. On information and belief, Corsair has directly infringed, literally or under the doctrine of equivalents, one or more claims of the '338 patent in this District and elsewhere in California and the United States. A claim chart is attached as **Exhibit C**.

37. To this end, Corsair has infringed, literally or under the doctrine of equivalents, either by itself or via an agent, at least claims 1-2 of the '338 patent by, among other things, making, offering to sell, selling, testing, and/or using the Accused Products (including the NIGHTSWORD RGB Tunable FPS/MOBA Gaming Mouse – IRONCLAW RGB WIRELESS Gaming Mouse – DARK CORE RGB PRO Wireless Gaming Mouse – SCIMITAR PRO RGB Optical MOBA/MMO Gaming Mouse – DARK CORE RGB PRO SE Wireless Gaming Mouse – IRONCLAW RGB FPS/MOBA Gaming Mouse – SCIMITAR RGB ELITE Optical MOBA/MMO Gaming Mouse – SCIMITAR Elite).

38. Upon information and belief, Corsair is liable for direct infringement of the '338 patent pursuant to 35 U.S.C. § 271(a) because it manufactures, makes, has made, uses, practices, imports, provides, supplies, distributes, sells, and/or offers for sale products and/or systems that practice at least claims 1-2 of the '338 patent.

**Indirect Infringement – 35 U.S.C. § 271(b), (c)**

39. Corsair has specifically intended for persons who acquired and used the Accused Products (including the NIGHTSWORD RGB Tunable FPS/MOBA Gaming Mouse – IRONCLAW RGB WIRELESS Gaming Mouse – DARK CORE RGB PRO Wireless Gaming Mouse – SCIMITAR PRO RGB Optical MOBA/MMO Gaming Mouse – DARK CORE RGB PRO SE Wireless Gaming Mouse – IRONCLAW RGB FPS/MOBA Gaming Mouse – SCIMITAR RGB ELITE Optical MOBA/MMO Gaming Mouse – SCIMITAR Elite), including its customers, to infringe at least claims 1-2 of the '338 patent. This is evident when Corsair encouraged and instructed customers and other end users to use the Accused

Products through its marketing materials, technical specifications, data sheets, web pages on its website, press releases, and user manuals, as well as at trade shows and through its sales and distribution channels that encouraged infringing sales, offers to sell, and importation of the Accused products.

40. By these actions, Corsair had the specific intent to induce, or was willfully blind to inducing, infringement of the '338 patent. By promoting the sale, use, and importation of the Accused Products, Corsair knew, or should have known, that its actions have actively induced infringement. End users of Corsair's Accused Products directly infringe at least claims 1-2 of the '338 patent when using the Accused Products. Corsair is liable for induced infringement under 35 U.S.C. § 271(b).

41. Additionally, Corsair also contributed to infringement of the '338 patent by others, including users who purchased the Accused Products, by providing the Accused Products, which are specially made or adapted for use in infringement of at least claims 1-2 of the '338 patent and are not staple articles of commerce suitable for substantial non-infringing use.

42. Corsair is therefore liable for contributory infringement under 35 U.S.C. § 271(c) on the basis that Corsair product users who use the Accused Products are infringing claims 1-2 of the '338 patent, as are the products themselves.

**Damages**

43. On information and belief, Corsair has profited from its infringing activities. Motiverse has been damaged as a result of Corsair's infringing conduct described in this Count. Corsair is thus liable to Motiverse in an amount that adequately compensates for Corsair's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. §§ 271, 281, 283, and 284. The amount of monetary damages Corsair's acts of infringement have caused to Motiverse cannot be determined without an accounting.

## **DEMAND FOR A JURY TRIAL**

Motiverse demands a trial by jury on all issues triable of right by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## **PRAYER FOR RELIEF**

WHEREFORE, Motiverse respectfully requests that this Court enter judgment in its favor and against Corsair, and that the Court grant Motiverse the following relief:

a)   Judgment and Order that Corsair has directly infringed one or more claims of the patent-in-suit at least under 35 U.S.C. § 271(a);

b)   Judgment and Order that Corsair has indirectly infringed one or more claims of the patent-in-suit through induced and/or contributory infringement at least under 35 U.S.C. § 271(b), (c);

c)   Judgment and Order that Corsair must pay Motiverse's past damages and costs pursuant to at least 35 U.S.C. § 284;

d)   Judgment and Order that Corsair must pay Motiverse pre-judgment and post-judgment interest on the damages award and the taxation of all allowable costs against Corsair;

///

///

e)  For such other and further relief as this Court shall deem appropriate, including a judgement that this case is "exceptional" under 35 U.S.C. § 285, and an award to Motiverse of its reasonable attorneys' fees incurred in this action.

Dated: July 22, 2025                    BROADVIEW IP LAW, P.C.

By:  /s/   Steven P. Chen

Steven P. Chen (SBN 251768),
Brian M. Fitzgerald (SBN 267279)
BROADVIEW IP LAW, P.C.
3200 El Camino Real, Suite 260
Irvine, CA 92602
Telephone: (949) 232-0721
Email: schen@broadviewlaw.com
Email: bfitzgerald@broadviewlaw.com
Email: email@broadviewlaw.com


Attorney for Plaintiff
MOTIVERSE INC.